**TECHNICOLOR GOVERNMENT
SERVICES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 659–84C.

United States Claims Court.

May 7, 1987.

Harvey G. Sherzer, Washington, D.C., for plaintiff; Kathleen C. Little and Scott Arnold, of counsel.

Genevieve Holm, with whom was Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant; James J. Paris and Stephen R. O'Neil, Dept. of Navy, of counsel.

## ORDER

SMITH, Chief Judge:

This case is before the court on defendant's motion for partial summary judgment with respect to six out of 15 of plaintiff's claims for alleged breaches of a requirements contract awarded and administered by the Naval Supply Center, San Diego. The dispute centers upon the parties' conflicting interpretations of various provisions of that contract. For the reasons set forth below, the court rejects defendant's arguments and, accordingly, defendant's motion for partial summary judgment is denied. The Claims Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. § 1491 (1982) and the Contract Disputes Act of 1978, 41 U.S.C. § 609(a)(1) (1982).

### Facts

On April 19, 1983, the Department of the Navy awarded Technicolor Government Services, Inc. ("TGS" or "plaintiff") contract number N00244–83–D–1539. Pursuant to the terms of this requirements contract, plaintiff was to provide the Naval Supply Center, San Diego, with audiovisual productions, graphic arts, still photography, television, motion picture, film library services, and equipment maintenance at the Naval Education and Training Support Center, Pacific Facilities.

On August 16, 1984, and again on January 15, 1985, plaintiff submitted certified claims for equitable adjustments in the amounts of $637,092.15 and $188,396.76, respectively. The final decision of the contracting officer dated March 29, 1985, determined that plaintiff was entitled to an equitable adjustment in the amount of $29,-364.59 and that the government was entitled to $185,520.89 due to plaintiff's failure to maintain government equipment.

Plaintiff's amended complaint, filed May 10, 1985, alleges 15 different constructive changes. Defendant's motion for partial summary judgment asserts that six of those claims are founded upon an unreasonable interpretation of the contract and since there are no material issues of fact, it is entitled to judgment in its favor. *See generally* RUSCC 56(b).

### Discussion

 Summary judgment is appropriate only when there are no issues of material fact in dispute and judgment is appropriate as a matter of law. *Weide v. United States,* 4 Cl.Ct. 432 (1984), *aff'd,* 765 F.2d 157 (Fed.Cir.1985), *cert. denied,* 474 U.S. 822, 106 S.Ct. 74, 88 L.Ed.2d 61 (1985). Further, all doubts relative to material facts in issue for the purposes of ruling on defendant's summary judgment motion must be resolved against the defendant as the moving party. *South Louisiana Grain Services, Inc. v. United States,* 1 Cl.Ct. 281 (1982). Moreover, in view of the fact that defendant's motion is for *partial* summary judgment, the court shall examine the record in the light of an even more rigorous standard than where a motion may entirely dispose of the need for any trial. The court is very conscious of the high cost of litigation to all parties and wishes to avoid forcing double expenditures of resources in the event the court's analysis is wrong. Since a trial will be held regardless of whether defendant's motion is granted, the court finds in this circumstance that to grant defendant's request

would not be in the interests of the efficient administration of justice.

### Issue One

Whether black and white photographs larger than 20″ × 24″ were to be ordered under line items 0018AQ and 0018AR?

■ Although defendant argues that the contract language makes it clear that 0018AQ and 0018AR concern the production of photographs ranging in size between 20″ × 24″ and 42″ × 8′, plaintiff contends that almost a year into the performance of the contract the contracting officer added new line items 0018AS to 0018AV which reflects that the contract was defective due to its failure to provide for all the necessary line items. Plaintiff argues that due to Dr. Sauer's * numerous letters to defendant advising that line items were missing, defendant finally took action and added the line items. These line items covered black and white prints ranging in size from 11″ × 14″ to 20″ × 24″. The new prices for these items ranged from $5.83 to $12.88 per unit as compared with the old price of $3.16 to $3.47.

Although the court cannot at this time determine the correctness of plaintiff's assertion that defendant's conduct in adding new line items proves that the contract was defective, plaintiff raises a genuine issue of fact which must be resolved at trial.

### Issue Two

Whether defendant correctly ordered mounted charts under line item 0020 rather than under line item 0024 Training Aids?

■ Defendant asserts that mounted charts were correctly ordered under line item 0020, as evidenced by the Preliminary Work Statement ("PWS") 5.2.4.1, which requires plaintiff to mount all charts on a stiff backing and then add acetate or lamination. Since solicitation amendment 0001 defines "charts" as all black and white prints up to 42″ × 8′, defendant contends it is clear that mounted charts fall under line item 0020. Moreover, defendant argues, the "Training Aids" listed in Technical Ex-

hibit 8 reflect that line item 0024 refers to items of a more complex nature, (not the mere mounting of a black and white photograph) which defendant also claims explains the price differential ($9.30 for Charts versus $235.00 for Training Aids).

Plaintiff, however, counters the foregoing by claiming that the defendant's argument completely ignores the contract provisions concerning charts as related to line item 0024 and Technical Exhibit 8. Since the first item of Technical Exhibit 8 is "Charts" which range in size from 30″ to 40″ to 40″ × 8′, line item 0020, when read in conjunction with Technical Exhibit 8, must be interpreted to cover sizes smaller than 30″ × 40″. Plaintiff bases its contention on the well-established principle that courts shall construe the provisions of a contract as coordinate, not contradictory. Plaintiff further notes that Technical Exhibit 8 does not mandate that Training Aids be complex models and that defendant can only prove its assertion that line item 0024 was meant to cover complex charts through testimony at trial. Thus, plaintiff raises questions sufficient to prevent the court from granting summary judgment in favor of defendant on this issue.

### Issue Three

Whether the contract required plaintiff to accept returns of audiovisual materials from fleet units as part of its duties to operate and maintain the audiovisual library?

■ Although defendant argues that the terms of the contract incorporate the Manual of Naval Photograph, OPNAV Instruction 3150.60, which purportedly gives plaintiff sufficient notice of its responsibilities, plaintiff contends that if the foregoing is really what defendant intended, it could have clearly set that requirement forth in the PWS. Again, issues are raised that cannot be answered in the absence of a factual setting. This setting can only be developed at trial.

### Issue Four

Whether the terms of the contract required plaintiff to provide all spare parts?

---

* Dr. Gerard Sauer is the Vice President of TGS

and prepared its bid preparation documents.

■ Despite defendant's cite to various paragraphs of the PWS which discusses spare parts, plaintiff argues that the contract does not define this term and, therefore, it reasonably relied on the industry definition. Plaintiff states that the $199.00 figure as used in the contract document refers to a threshold figure with respect to purchasing decisions, i.e., that plaintiff would be competing with an Office of Management and Budget cost comparison. Thus, whether or not plaintiff relied on the industry's trade usage and whether that reliance was reasonable, is a matter for the court to determine at trial.

### Issue Five

Whether plaintiff is entitled to compensation for the cost of manufacturing intermediate products?

■ Defendant urges the court that it is entitled to summary judgment on this claim because it believes there is nothing in the contract which supports plaintiff's contention that it is entitled to be compensated for production of definable intermediate products. Defendant relies on the PWS paragraph 1.15.2 which states that intermediate products become the property of the government. Thus, reasons defendant, if intermediates were required to be ordered separately under the contract, it would have been unnecessary to include this paragraph. It is defendant's position that the contract contemplates a price for each line item but does not contemplate compensating the plaintiff for each intermediate step which could have been itself ordered as an end product.

However, plaintiff contends that the conduct of defendant demonstrate that TGS is entitled to compensation. Plaintiff asserts that defendant compensated TGS for intermediate products prior to this dispute and would not have done so unless the parties contemplated such compensation. Thus, a genuine issue of fact concerning compensation for the production of intermediate products makes summary judgment on this claim inappropriate.

### Issue Six

Whether plaintiff is entitled to compensation for the cost of adding acetate or lamination to charts?

■ With regard to this claim, defendant submits that the PWS at paragraph 5.2.4.1 provides that charts are to be mounted and laminated or covered with acetate at the government's request.

Plaintiff contends that simply because a line item—in this instance 0020—references 5.2.4.1 of the PWS, does not mean that such a service is to be rendered without compensation. Moreover, plaintiff urges the court to reject defendant's argument based upon the government's conduct in adding line items for covering with acetate or lamination, as part of Change Order P00016. Therefore, plaintiff argues the reasons for adding such a line item presents a genuine issue of material fact which prevents the court from granting defendant's motion on this claim. The Court concurs.

### Conclusion

Because genuine issues of material fact are present in each claim challenged by defendant in its motion, this case cannot be resolved solely on the basis of the record that is presently before the court. The court wishes to stress that due to the nature of this motion, i.e., one for *partial* summary judgment, the efficient administration of justice argues for resolving all issues presented by plaintiff at a trial even though defendant does present strong arguments.

The transaction costs of this trial are such that the incremental costs of additional testimony are not nearly as high as a possible second trial should the court mistakenly grant defendant's motion. Based upon that premise and plaintiff's apparent demonstration of at least one issue of material fact under each challenged claim, defendant's motion for partial summary judgment is denied.

IT IS SO ORDERED.

NO COSTS.